**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| | : | |
| STEVE-ANN MUIR, for herself and all others similarly situated, | : | **Civil Action No. 16-0521 (SRC)(CLW)** |
| | : | |
| Plaintiff, | : | |
| | : | **OPINION** |
| v. | : | |
| | : | |
| EARLY WARNING SERVICES, LLC; FIRST ADVANTAGE BACKGROUND SERVICES CORP.; and JOHN DOES 1-10, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**CHESLER**, District Judge

Plaintiff Steve-Ann Muir ("Plaintiff") brings this action under the Fair Credit Reporting

Act ("FCRA"), 15 U.S.C. § 1681, et seq., against Defendant Early Warning Services, LLC

("Defendant"). Now before the Court is Defendant's motion to dismiss Plaintiff's Second

Amended Complaint ("SAC") for lack of subject matter jurisdiction, pursuant to Federal Rule of

Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil

Procedure 12(b)(6). (ECF No. 96.) Plaintiff opposes the motion. (ECF No. 103.) The Court

has reviewed the parties' submissions and proceeds to rule without oral argument. See Fed. R.

Civ. P. 78(b). For the reasons set forth below, Defendant's motion will be denied.

**I. BACKGROUND**

From December 2013 to February 2014, Plaintiff was employed as a sales and service

specialist with Bank of America. (SAC ¶¶ 15-16.) In August 2014, she applied for a position as

a customer sales representative with Wells Fargo Bank ("Wells Fargo"). (SAC ¶ 17.) Wells

Fargo subsequently offered her that position, subject to a background check. (SAC ¶ 17.) It

hired First Advantage Background Services Corp. ("First Advantage") to perform the check.

(SAC ¶¶ 17-18, 48.)

First Advantage hired Defendant to complete a portion of its investigation: specifically,

to report on whether Plaintiff had ever been terminated by a bank for internal fraud, i.e. fraud

perpetrated by an employee against his or her own employer. (SAC ¶¶ 18, 49.) Defendant

collects and maintains information from banks on individuals who have been terminated for

committing or having attempted to commit internal fraud. (SAC ¶¶ 10-11, 22-25.) Defendant's

report to First Advantage stated that Bank of America, in fact, had terminated Plaintiff for

internal fraud. (SAC ¶¶ 21-23, 25, 27, 30.) The results of this report were included in First

Advantage's report to Wells Fargo (the "First Advantage Report"). Plaintiff later received a

copy of the First Advantage Report. (SAC ¶¶ 32-33, 76.)

Thereafter, in November 2014, Plaintiff "requested directly from [Defendant] the

contents of her file maintained by [Defendant]." (SAC ¶ 77.) In response, Defendant provided

Plaintiff with a "File Disclosure" report, which stated that Bank of America had "[c]ontribut[ed]"

an "Unfavorable Employment Record" to Plaintiff's file. (SAC ¶ 80; Defendant Early Warning

Services, LLC's Brief in support of Its Motion to Dismiss Plaintiff's Second Amended

Complaint ("Def. Mov. Br."), Exhibit A, First Advantage Report, at 1.) The file disclosure

report did not state that, according to Defendant's records, Bank of America had terminated

Plaintiff for internal fraud. (SAC ¶¶ 77-78.)

Several months later, in May 2015, Plaintiff sent letters to First Advantage and Defendant

disputing that she had ever committed internal fraud while at Bank of America and disputing that

she had been terminated for this reason. (SAC ¶ 34.)  In response, Defendant sent Plaintiff a

letter stating that it had conducted a reinvestigation into the disputed information and that "[t]he

reinvestigation confirms that your file contains information which is incomplete . . . [or]

inaccurate, or [whose] . . . accuracy . . . cannot be verified."  (SAC ¶ 35.)

In January 2016, Plaintiff commenced the instant action.  As against Defendant,

Plaintiff's SAC alleges a single cause of action, for negligent or willful failure to provide all

information in Plaintiff's consumer file in violation of sections 15 U.S.C. § 1681g, 15 U.S.C. §

1681n, and 15 U.S.C. § 1681o of the FCRA.  Defendant now moves to dismiss the SAC for lack

of standing, arguing that Plaintiff's allegations fail to establish that she has suffered an injury in

fact, specifically a concrete and particularized injury.  Alternatively, Defendant seeks dismissal

pursuant to Rule 12(b)(6), on grounds that Plaintiff's allegations fail to establish that Defendant

was negligent or willful in purportedly failing to disclose all of the information in Plaintiff's file.

The Court will address Defendant's objections in this order.

## II.      SUBJECT MATTER JURISDICTION

1.      *Legal Standard*

"A motion to dismiss for want of standing is . . . properly brought pursuant to Rule

12(b)(1), because standing is a jurisdictional matter."  Constitution Party of Pa. v. Aichele, 757

F.3d 347, 357 (3d Cir. 2014) (quoting Ballentine v. United States, 486 F.3d 806, 810 (3d Cir.

2007)) (internal quotation marks omitted).  Challenges to standing, or to subject matter

jurisdiction generally, may be regarded as facial or factual.  Davis v. Wells Fargo, 824 F.3d 333,

346 (3d Cir. 2016).  A facial challenge "contests the sufficiency of the pleadings," S.D. v.

Haddon Heights Bd. of Educ., 833 F.3d 389 n.5 (3d Cir. 2016) (quoting Taliaferro v. Darby

Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006), as is the case here, whereas a factual

challenge disputes the facts underlying a plaintiff's jurisdictional allegations, Aichele, 757 F.3d

347, 358 (3d Cir. 2014); Mortensen v. First Fed. Sav. & Loan, 549 F.2d 884, 891 (3d Cir. 1977).

When reviewing a facial challenge, a court "must only consider the allegations of the

complaint[,]" which it takes to be true, "and documents referenced therein and attached thereto,

in the light most favorable to the plaintiff." In re Schering Plough Corp., 678 F.3d at 243

(quoting Gould Elecs. Inc. v. United States, 220 F.3d 169, 176 (3d Cir. 2000)) (internal quotation

marks omitted). )). As always, "[t]he burden of establishing federal jurisdiction rests with the

party asserting its existence." Lincoln Benefit Life Co. v. AEI Life, LLC, 800 F.3d 99, 105 (3d

Cir. 2015) (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3, 126 S. Ct. 1854, 164

L.Ed.2d 589 (2006)).

2.      *Standing*

"'Article III of the Constitution limits the judicial power of the United States to the

resolution of Cases and Controversies, and Article III standing enforces the Constitution's case-

or-controversy requirement.'" Nichols v. City of Rehoboth Beach, 836 F.3d 275, 279 (3d Cir.

2016) (quoting Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 597-98, 127 S. Ct.

2553, 168 L. Ed. 2d 424 (2007)) (internal quotation marks and alterations omitted). The

"irreducible constitutional minimum of standing" consists of three elements. Spokeo, Inc. v.

Robins, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016) (quoting Lujan v. Defs. of Wildlife, 504

U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). First, a plaintiff must establish

that he or she suffered an "injury in fact." Id. (citing Lujan, 504 U.S. at 560; Friends of the

Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180, 120 S. Ct. 693, 145 L.Ed.2d

610 (2000)). To do so, "a plaintiff must show that he or she suffered 'an invasion of a legally

protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural

or hypothetical.'" Id. at 1548 (quoting Lujan, 504 U.S. at 560).  Second, a plaintiff must

establish that this 'injury in fact' is "fairly traceable to the challenged conduct of the defendant."

Id. at 1547 (quoting Lujan, 504 U.S. at 560).  Third, a plaintiff must show that his or her 'injury

in fact' "is likely to be redressed by a favorable judicial decision."  Id. (quoting Lujan, 504 U.S.

at 561).

In Spokeo, the Supreme Court recently discussed several aspects of the injury-in-fact

requirement.  In that case, a defendant website allegedly disclosed inaccurate credit-related

information to a third party and, purportedly, thereby violated several substantive sections of the

FCRA, none of which are at issue in this case.  Id. at 1545-46.  The Spokeo court held, among

other things, that 'concreteness' and 'particularization' are independent requirements for

purposes of standing.  Id. at 1548.  It held that "[f]or an injury to be 'particularized,' [the injury]

'must affect the plaintiff in a personal and individual way.'"  Id. (quoting Lujan, 504 U.S. at 560

n. 1).  In contrast, for an injury to be concrete, it must be "'de facto'; that is, it must actually

exist" in the sense that it is "real," and not "abstract."  Id.

The Spokeo court was careful to note, however, that an injury's being "abstract" is not

the same as its being intangible.  Thus, "intangible injuries can [also] . . . be concrete."  Id. at

1549 (citing Pleasant Grove City v. Summum, 555 U. S. 460, 129 S. Ct. 1125, 172 L. Ed. 2d 853

(2009); Church of Lukumi Babalu Aye, Inc. v. Hialeah, 508 U. S. 520, 113 S. Ct. 2217, 124 L.

Ed. 2d 472 (1993)).  By extension, such injuries can constitute injuries in fact.

The Spokeo court identified two considerations that it regarded as "instructive" "[i]n

determining whether an intangible harm constitutes [an] injury in fact."  Id.  One of these is

"history," or "whether an alleged intangible harm has a close relationship to a harm that [was]

traditionally . . . regarded as providing a basis for a lawsuit in English or American courts."  Id.

For example, in <u>Vt. Agency of Nat. Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 120 S. Ct. 1858, 1863 (2000), cited by the <u>Spokeo</u> court as illustration, a relator was held to have standing to bring his *qui tam* action because the court had found that the financial harm to governments that relators espouse had been regarded as a valid basis for a civil action since at least the 17th century. <u>Stevens</u>, 529 U.S. at 776-77.

The second consideration identified by the <u>Spokeo</u> court is "the judgment of Congress," or whether Congress has "elevat[ed] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." <u>Id.</u> (quoting <u>Lujan</u>, 504 U.S. at 578) (internal quotations omitted). By way of illustration, the <u>Spokeo</u> court cited <u>Public Citizen v. Department of Justice</u>, 491 U. S. 440, 109 S. Ct. 2558, 105 L. Ed. 2d 377 (1989), and <u>Federal Election Comm'n v. Akins</u>, 524 U. S. 11, 118 S. Ct. 1777, 141 L. Ed. 2d 10 (1998), two cases involving "informational injur[ies]." <u>Akins</u>, 524 U. S. at 24.

In both <u>Public Citizen</u> and <u>Akins</u>, a defendant or third party had allegedly failed to disclose or make public certain information that the plaintiffs in the case had desired and had argued was subject to disclosure under a federal statute. <u>Public Citizen</u>, 491 U.S. at 449; <u>Akins</u>, 524 U.S. at 20-21. As the <u>Spokeo</u> court observed, in each case the injury of which the plaintiffs complained was described as a failure or inability to obtain information that was subject to statutory disclosure; moreover, in each case this injury was held to constitute an injury in fact. <u>Spokeo</u>, 136 S. Ct. at 1549-50; <u>Public Citizen</u>, 491 U.S. at 449-50; <u>Akins</u>, 524 U.S. at 20.[1]

The <u>Spokeo</u> court noted, further, that Congress in each of these cases had statutorily "granted" a "procedural right," <u>Spokeo</u>, 136 S. Ct. at 1540, to the information at issue and had

_____

[1]  In Akins, the court had also noted that such information "would help [the plaintiffs] . . . to evaluate candidates for public office." The Court in <u>Akins</u> also noted that "[t]he injury of which [the plaintiffs] complain . . . is injury of a kind that the FECA seeks to address;" that Congress had plainly "intended to authorize th[e] kind of suit" that the plaintiffs brought; and that, therefore, the plaintiffs had "prudential standing." <u>Id.</u> at 20.

created a private cause of action to vindicate this right. Thus, Congress had identified a concrete, intangible harm and had elevated it to the status of a legally cognizable injury. Under these circumstances, the Spokeo court counseled, "a plaintiff need not allege any additional harm beyond the one Congress has identified." Id. at 1549 (emphasis in original) (citations omitted).

3.      *Analysis*

Section 1681g(a)(1) requires that a consumer reporting agency "upon request, . . . clearly and accurately disclos[e] to [any] consumer: . . . [a]ll information in the consumer's file . . . ." 15 U.S.C. § 1681g(a). A consumer reporting agency is liable for "actual damages" if it negligently fails to comply with this requirement, 15 U.S.C. § 1681o(a)(1), and it is liable for "actual damages, or statutory damages ranging from $100 to $1,000, as well as punitive damages and attorney's fees" if it willfully fails to comply, 15 U.S.C. § 1681n(a).

Here, the injury of which Plaintiff complains is her failure to obtain information that she argues Section 1681g requires Defendant to include in its file disclosure to her: namely, the fact that, according to Defendant's records, Bank of America terminated Plaintiff for internal fraud. Plaintiff alleges that she was deprived of this information when Defendant's file disclosure report stated only that Bank of America had provided an unfavorable report, without stating what was unfavorable about it.

Section 1681g is, of course, part of the FCRA, which was enacted partly to "ensur[e] fair and accurate credit reporting.'" Fuges v. Sw. Fin. Servs., Ltd., 707 F.3d 241, 247 (3d Cir. 2012) (quoting Safeco Insurance Co. of America v. Burr, 551 U.S. 47, 127 S. Ct. 2201, 167 L. Ed. 2d 1045 (2007)). Through the FCRA, Congress had hoped to solve several problems facing individuals who had been, or who could be, affected by inaccurate credit information. These problems include "'the inability at times of the consumer to know he is being damaged by an

adverse credit report,' the lack of 'access to the information in [a consumer's] file,' [and] the

'difficulty in correcting inaccurate information.'" Cortez v. Trans Union, LLC, 617 F.3d 688,

706 (3d Cir. 2010) (quoting S. Rep. No. 91-517, at 3 (1969)). Section 1681g is designed to help

remedy these problems, particularly individuals' failure to obtain information that would help

them to correct inaccurate information in their files. Together with Sections 1681n and 1681o,

the provision aims to solve this problem by granting consumers a statutory right to this

information and by creating a private cause of action to vindicate that right.

In light of this legislative history, the Court is satisfied that, at minimum, Plaintiff's

failure to obtain information that is subject to disclosure under the FCRA and that would help her

to correct inaccurate information in her file constitutes an injury in fact. This injury is precisely

the sort of 'informational injury' that the Supreme Court has recognized as concrete, and in the

present case it is certainly particularized, as the allegedly undisclosed, inaccurate information

concerned Plaintiff herself.

Furthermore, Plaintiff's allegations establish that she suffered this injury, for two reasons.

First, her allegations show that the allegedly undisclosed information would have helped her to

correct the inaccurate information in her file. Because, in this case, the inaccurate information

simply was the undisclosed information, Plaintiff's receipt of it would have alerted her to the

need to correct it.[2] Second, Plaintiff's allegations show that she was deprived of the information.

Simply put, a trier of fact could conclude that Defendant's omission of any reference to internal

fraud, or termination therefore, in its file disclosure deprived Plaintiff of this very information.

---

[2] Plaintiff's receipt of this information would also have better informed her of the evidence that she might need to prepare in disputing any information maintained by Defendant. Under 15 U.S.C. § 1681i(a)(4), consumers are permitted to provide evidence when disputing purportedly inaccurate information in their files, and, indeed, consumer reporting agencies are permitted to dismiss purported disputes as "frivolous" if consumers do not provide "sufficient information to investigate the disputed information," 15 U.S.C. § 1681i(a)(3)(1).

In its moving papers and reply, Defendant contests the second of these points—that Defendant's allegedly incomplete disclosure could have deprived Plaintiff of any information. As grounds for this contention, Defendant points to Plaintiff's allegation that she received a copy of the First Advantage report before requesting a file disclosure from Defendant. (SAC ¶¶ 77-78.) This report contains a section titled "Early Warning Service," Defendant's name, and the following statement: "Searched EWS for Steve-Ann Muir. Records were found for STEVE ANN MUIR." (Def. Mov. Br., Exhibit A, First Advantage Report, at 1.) The section titled "Early Warning Service" also contains a reference to "Bank of America" as a "[c]ontributor" of "Internal Fraud Match Information." (Id.) Based on these factual allegations, Defendant argues that a trier of fact could not reasonably infer that Plaintiff was later deprived of any information concerning Bank of America and internal fraud. Thus, Defendant argues, Plaintiff's allegations cannot establish that she suffered her claimed injury in fact.

As Plaintiff notes, however, the First Advantage Report does not state that the information contained in it, including in the section titled 'Early Warning Service,' was maintained by Defendant rather than by First Advantage. Indeed, in her SAC, Plaintiff specifically alleges that "[u]pon reviewing the First Advantage report, it was unclear to [Plaintiff] what information in the report was maintained or generated by First Advantage, and what information was merely reproduced from files maintained by [Defendant]." (See SAC ¶ 76.) Consequently, viewing Plaintiff's alleged facts in a light most favorable to her, a trier of fact could reasonably conclude that Plaintiff was unaware that, according to Defendant's records, Bank of America had terminated her for internal fraud. Therefore, Plaintiff's reference to the First Advantage Report does not preclude the otherwise reasonable inference that she was deprived of the information at issue.

Accordingly, for the foregoing reasons, the Court finds that Plaintiff's allegations establish that she suffered an injury in fact. Defendant's motion will therefore be denied to the extent that it seeks dismissal pursuant to Rule 12(b)(1).

## III.    DISMISSAL PURSUANT TO RULE 12(b)(6)

1.    *Legal Standard*

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.)

When considering a Rule 12(b)(6) motion to dismiss, a court may consider allegations in the complaint, documents attached thereto or specifically referenced therein, and matters of public record. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998). A "court must accept as true all factual allegations contained in the complaint and all reasonable inferences that can be drawn therefrom, . . . view[ed] . . . in [a] light most favorable to the plaintiff." OFI Asset Mgmt. v. Cooper Tire & Rubber, 834 F.3d 481, 489 (3d Cir. 2016) (citations omitted). On the other hand, it must "disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements." In re Vehicle Carrier Servs. Antitrust Litig., 846 F.3d 71, 79 n. 4 (3d Cir. 2017) (quoting James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012)).

2.      *Analysis*

As the Court has noted, consumer reporting agencies are liable for actual damages if they

negligently fail to comply with any of the FCRA's provisions, including Section 1681g.  15

U.S.C. § 1681o(a)(1).  They are liable for actual damages, or statutory damages ranging from

$100 to $1,000, as well as punitive damages and attorney's fees, if they willfully fail to comply.

15 U.S.C. § 1681n(a).  To establish willful non-compliance, a plaintiff must show that a

defendant either knowingly or recklessly violated the statutory provision at issue.  Burr, 551 U.S.

at 56-60; see Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir. 1997).

For purposes of Section 1681g, a consumer file's consists of "'all of the information on

that consumer recorded and retained by a consumer reporting agency regardless of how the

information is stored.'"  Cortez, 617 F.3d at 711 (quoting 15 U.S.C. § 1681a(g)).  In particular,

this file includes "'all information . . . that might be furnished, or has been furnished, in a

consumer report on that consumer.'"   Id. at 711-12 (quoting Gillespie v. Trans Union Corp., 482

F.3d 907, 909 (7th Cir. 2007)).

The plain meaning of Section 1681g makes clear, then, that Plaintiff's file included the

proposition, so to speak, that Bank of America had purportedly terminated Plaintiff for internal

fraud.  Indeed, this information had been furnished in a consumer report on Plaintiff, as it was

included in Defendant's report to First Advantage.  Given these facts, and considering Plaintiff's

allegations, a trier of fact could reasonably infer that Defendant knew or should have known that

the omitted detail was a part of Plaintiff's file and that Defendant's disclosure to her did not

contain it.  Additionally, a trier of fact could reasonably conclude that a consumer reporting

agency exercising reasonable care to provide all information in Plaintiff's file would have

included this detail.  Consequently, the Court finds that Plaintiff has pled sufficient factual

content to justify the inference that Defendant's alleged violation of Section 1681g(a)(1) was either willful or negligent.  Accordingly, Defendant's motion will be denied to the extent that it seeks dismissal pursuant to Rule 12(b)(6).

## IV.    CONCLUSION

Therefore, for the foregoing reasons, EWS's motion to dismiss for lack of standing, pursuant to Fed. R. Civ. P. 12(b)(1), or failure to state a claim on which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), is DENIED.  An appropriate order shall issue.


                                    /s Stanley R. Chesler
                                    STANLEY R. CHESLER
                                    United States District Judge

Dated: June 16, 2017